UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WILLBROS ENGINEERS, INC. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-CV-436-TCK-PJC |
| | ) | |
| MASTEC NORTH AMERICA, INC., | ) | |
| d/b/a MASTEC PIPELINE COMPANY | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Before the Court are Plaintiff Willbros Engineers, Inc.'s Motion for Partial Summary Judgment (Docket No. 77) and Defendant Mastec North America, Inc. d/b/a Mastec Pipeline Company's Motion for Summary Judgment (Docket No. 85).

I.   Factual Background

In October of 2001, Willbros entered into a contract with Explorer Pipeline Company ("Explorer") in which Willbros agreed to serve as the contractor on a project designed to expand the pumping capacity of the Explorer Mainline Pipeline System. Pursuant to this contract, Willbros was to provide Explorer with a variety of services in connection with upgrading and expanding the Explorer Mainline Pipeline System, which transports gasoline, jet fuel, and fuel oil from Gulf Coast refineries' import facilities to markets in the central United States. Willbros engaged Defendant Mastec North America, Inc. d/b/a Mastec Pipeline Company ("MasTec") as a subcontractor to provide certain services that were within the scope of the primary construction contract with Explorer. Specifically, MasTec was engaged to construct new pump stations at the Rolla, Weldon Spring and Springfield, Missouri locations.

1

At issue in this litigation are two construction subcontracts covering the scope of work MasTec was to perform for Willbros.  One of these is entitled Construction Subcontract Package # 5 and is dated April 5, 2002.  The other is entitled Construction Subcontract Package # 4 and is dated  June 10, 2002.  These two contracts are referred to collectively as the "Subcontracts."  The Subcontracts contain the same "Scheduled Substantial Completion Date" of September 1, 2002.  The Subcontracts are identical in all material respects for purposes of summary judgment.  MasTec's work under the Subcontracts was not completed by the scheduled date of September 1, 2002.

Prior to the date Willbros filed this lawsuit, MasTec submitted an invoice to Willbros demanding in excess of $3.5 million for "extended man hours and equipment related delays" related to the Subcontracts.  Willbros commenced litigation against MasTec seeking a declaratory judgment regarding the $3.5 million invoice and also seeking monetary damages for MasTec's failure to perform various obligations in accordance with the Subcontracts.  Specifically, Willbros asserted the following claims: (1) a claim for declaratory judgment that Willbros is not liable in whole or in part for the invoice submitted by MasTec in excess of $3.5 million; (2) breach of contract based on MasTec's performance failures under the Subcontracts, including, but not limited to, failure to complete the work by the scheduled date, failure to use the measure of skill and care used by other similar professionals; failure to provide weekly progress reports; failure to coordinate the work of its own subcontractors, failure to timely obtain permits; and failure to perform its work free of defects; (3) breach of express warranty based on MasTec's failure to perform the warranties set forth in the Subcontracts; and (4) breach of the contractual duty of good faith and fair dealing.[1]

_____

[1]  Willbros also sued Liberty Mutual Insurance Company ("Liberty"), which was the surety of a performance bond in the amount of $2,477,301.71 for which MasTec was the principal.  The two claims for relief asserted against Liberty were dismissed with prejudice by

MasTec filed a Counterclaim and asserted the following claims for relief against Willbros: (1) breach of contract based on Willbros' failure to pay sums due under the Subcontracts, including amounts owed for "retainage" withheld by Willbros, amounts owed for change orders, and amounts owed for changes in the scope of work and delays in the performance of the work; (2) breach of contract based on Willbros' failure to deliver plans, specifications, and materials as provided in the Subcontracts; (3) breach of duty to provide accurate information in awarding the contract; (4) breach of the duty of good faith and fair dealing;[2] (5) breach of contract based on Willbros' changes in design, specifications, and the means and methods in the performance of the work; (6) unjust enrichment based on Willbros' wrongful retention of sums; and (7) resulting trust and/or constructive trust based on Willbros' wrongful retention of funds.

II.   Summary Judgment Standard

A motion for summary judgment is properly granted "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In applying this standard, the Court must view the evidence and draw all inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-52 (1986); *Mares v. ConAgra Poultry Co.,* 971 F.2d 492, 494 (10th Cir. 1992). Where the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and identify specific facts which demonstrate the existence of an issue to be tried by the jury. *See Mares*, 971 F.2d at 494.

---

stipulation of the parties on October 25, 2005. (*See* Docket No. 42.)

[2]  MasTec asserts this claim as a breach of contract and an independent tort.

III.    <u>MasTec's Motion for Summary Judgment</u>[3]

MasTec argues it is entitled to summary judgment against Willbros on Willbros' claims for breach of contract and on its own claims for breach of contract.  MasTec raises one argument in an attempt to prevail as a matter of law on the breach of contract claims - that Willbros undisputedly caused MasTec's failure to complete the work by the completion date set forth in the Subcontracts. In an attempt to prove that this fact is undisputed, MasTec cites the deposition testimony of John Miller ("Miller"), David Hairston ("Hairston"), and James Beasley ("Beasley"), who were employees of Willbros at the relevant times.  Miller and Hairston collectively testified, and it is undisputed that, Willbros was responsible for procuring certain "mainline pumps" that were to be installed by MasTec, that the pumps were scheduled to have been delivered by June or July 2002, that there were delays in delivery of these pumps, and that delivery of the pumps was essential for successful completion of the job.  (*See* Facts 9-14 of Def.'s Mot. for Summ. J, which were admitted by Willbros.)  Relying on the following testimony by James Beasley ("Beasley"), MasTec asserts that these undisputed delays in delivery of the mainline pumps caused MasTec's failure to complete the work by the scheduled date and that MasTec is therefore entitled to summary judgment:

Q:      In your opinion, who is responsible for the delays in Work Package #1?

---

[3]  In the Motion for Summary Judgment, MasTec first argued that it was entitled to summary judgment against Willbros on all of MasTec's counterclaims because Willbros failed to file a reply to MasTec's Answer to First Amended Complaint and Counterclaim.  Willbros had filed a reply to MasTec's Answer and Counterclaim, but did not file a reply to the amended version due to inadvertence.  After MasTec filed a motion for summary judgment on its counterclaims on these grounds, Willbros filed a motion for leave to file its reply to the amended complaint and counterclaim out of time.  The Court referred the motion, and Magistrate Judge McCarthy granted the motion.  Willbros filed its Reply to MasTec's [Amended] Counterclaim on March 6, 2006.  The parties were also allowed to file amended summary judgment briefing. To the extent MasTec moves for summary judgment on its counterclaims on grounds of this procedural oversight by Willbros, the motion is denied.

A:      I'm not sure what the - what you mean by "delays."

Q:      Well, we know that the project was not completed on time.  Would you agree with that?

A:      It was not completed - It did not meet the substantial completion date in the contract.  Correct.

. . . .

Q:      *Who is responsible for the contractual substantial completion date not being met on Work Package # 4?*

A:      *Willbros.*

Q:      *Who is responsible for the contractual substantial completion date not being met on Work Package # 5.*

A:      *Willbros.*

(Beasley Depo. 83:3-84:5, Ex. C to Def.'s Mot. for Summ. J. (emphasis added).)   Citing this testimony and without further explanation, MasTec summarily concludes that "MasTec is entitled to summary judgment on its causes of action for breach of the construction subcontracts."  (Def.'s Mot. for Summ. J. at 7.)  Presumably, MasTec also asserts these "undisputed" facts entitle it to summary judgment on Willbros' claims for breach of contract.

As an initial matter, the Court observes that both parties have alleged several different and distinct breaches of the Subcontracts and that the claims and counterclaims asserted are not related solely to MasTec's failure to meet the completion date.  MasTec's motion does not, for example, address Willbros' claim for declaratory relief relating to the $3.5 million invoice, Willbros' claims for breach relating to other of MasTec's performance failures, or even its own breach of contract claims relating to Willbros' failures to submit plans and specifications, work changes, or providing accurate information in the bidding process.  Thus, even assuming the Court were to find that the above testimony proved as a matter of law that Willbros caused the delay in completion, that would not entitle MasTec to summary judgment on all breach of contract claims before the Court.

With respect to the argument MasTec has raised - that it is entitled to summary judgment to breach of contract claims related to untimely performance - the Court concludes that material issues

5

of fact exist as to whether Willbros' failure to deliver the pumps caused the delay in completion or whether MasTec's own failures caused the delay in completion.  Through the deposition testimony of Miller and Fred Britt ("Britt"), a former MasTec employee, Willbros has presented evidence that the delay in providing the pumps did not cause MasTec any *actual* delay because (1) MasTec had not progressed the work to a point that it was ready to begin the work associated with pump installation; and (2) there was another way to perform their scope of work, that is, to build "up to the pump" rather than building from the "pump out."  (*See* Plf.'s Resp. to Def.'s Mot. for Summ. J at 22 and Fact Nos. 36-41.)  Willbros' countervailing evidence regarding the cause of delay in completion presents a question of fact that cannot be decided by the Court as a matter of law.

Beasley's testimony, as set forth above and prior to its being amended,[4] is not sufficient to overcome Willbros' other evidence and serve as stand-alone proof that Willbros' actions caused MasTec's untimely performance.  First, Beasley expressed concern over what was meant by "delays," indicating he did not fully understand the questions being asked. Second, the questions and answers, even as they were originally stated by Beasley, could be read and interpreted in different ways.  For example, the questioner's use of the word "responsible," could be understood to ask what entity is ultimately liable or responsible to Explorer for the work being completed on time.  Thus, Beasley's answer that Willbros was "responsible" could mean that Willbros was ultimately responsible for the work not being completed, without any regard to whether such failure was caused by Willbros or caused by MasTec.  This question of who is "responsible" could be different, therefore, from the question of what entity, MasTec or Willbros, caused the untimely performance.

---

[4] Following his deposition, Beasley amended his deposition via Deposition Correction Sheet.

Based on the context of Beasley's testimony and ambiguities in wording of the questions, the Court is unwilling to construe these isolated statements by Beasley that Willbros is "responsible" for the work not being completed on time as an admission that Willbros was the cause of the delay in MasTec's completion of the work. To the contrary, this dispute is central to the lawsuit. Beasley's testimony, even in its original form, does not constitute the type of "admission" that entitles MasTec to judgment as a matter of law.

Beasley later amended his testimony via Deposition Correction Sheet. In his corrected responses, Beasley amended his answer to the question of what entity is responsible for the delays to read: "Per our contract with Explorer, Willbros was ultimately responsible." (*See id.* at Ex. E.) Thus, as explained above, Beasley alleges to have understood the word "responsible" to mean what entity was ultimately liable, rather than what entity actually caused the delay in completing the work to be performed by MasTec. MasTec contends that Beasley's testimony was not properly amended pursuant to Federal Rule of Civil Procedure 30(e) because the amended testimony strays substantively from the original testimony and is nothing more than an attempt to alter damaging statements. *See Garcia v. Pueblo Country Club*, 299 F.3d 1233 (10th Cir. 2002) ("The Rule [Rule 30(e)] cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses.").

An amendment pursuant to Federal Rule of Civil Procedure 30(e) must be disregarded if it constitutes an attempt to create a "sham fact issue." *See Burns v. Bd. of Cty. Comm'rs of Jackson Cty.*, 330 F.3d 1275, 1282 (10th Cir. 2003). "Factors to be considered in determining whether an affidavit [or amended deposition testimony] presents a sham issue include 'whether the affiant was

cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.'" *Id.* (citing *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986)).  The first two factors do not weigh in favor of allowing amendment because Beasley was cross examined at his deposition and because his corrections were not based on newly discovered evidence.  *See id.*  Unlike in *Burns*, however, the Court finds the third factor is satisfied and outweighs the other two factors.  As explained by the Court above, the word "responsible" could have had multiple meanings to Beasley in the context of the questions asked, and Beasley reasonably could have been clarifying or explaining his answer rather than intentionally altering damaging testimony.  Beasley's amendment to his deposition testimony is not an attempt to create a "sham" fact issue but instead is an "attempt to explain" a previous answer that reflected some confusion as to what was being asked.  Therefore, the Court holds that Beasley's amended testimony shall stand and need not be disregarded.  In any event, for purposes of summary judgment, the Court finds even the original testimony of Beasley insufficient to eliminate all questions of fact on the issues presented.

IV.    Willbros' Motion for Partial Summary Judgment

Willbros filed a partial motion for summary judgment, seeking judgment as a matter of law as to (1) Plaintiff's first counterclaim for breach of contract, to the extent that it seeks amount for "retainage" withheld by Willbros, and (2) Plaintiff's fourth claim for relief for breach of the duty of good faith and fair dealing.

A.    Alleged Breach Based on Willbros' Failure to Pay Retainage

As part of MasTec's first counterclaim for breach of contract, MasTec alleges that Willbros

presently owes MasTec the amount that has been withheld by Willbros as "retainage."  It is undisputed that the amount of retainage that has been withheld is $642,243.00.  Willbros claims it is entitled to judgment as a matter of law on this aspect of MasTec's breach of contract claim because MasTec has failed to satisfy a condition precedent to Willbros' obligation to pay the retainage amount.  Specifically, Willbros alleges that it is undisputed that MasTec has not provided, and is unwilling to provide what Willbros refers to as a "lien-free certificate."  Willbros contends that, until this condition precedent is satisfied, its obligation to pay the retainage amount has not arisen.

Paragraph 11 of the Subcontracts, entitled "Compensation for the Work," provides that "[c]ompensation to Subcontractor [MasTec] for the proper performance of the Work shall be in accordance with Exhibit "B" attached, with ten percent (10%) of the Subcontract Price to be withheld as retainage from Subcontractor's final invoice(s) to Willbros." (*See* Plf.'s Mot. for Partial Summ. J., Ex. A at ¶ 11; Ex. B at ¶ 11.)  Paragraph 16 of the Subcontracts, entitled "Liens," provides:

> Subcontractor agrees to promptly pay or discharge all liens or attachments which may be filed or levied in connection with the performance of the Work and all taxes levied upon Subcontractor, its equipment, property and operations, and to indemnify, defend and hold harmless Willbros and Owner therefrom.  *Each payment* to Subcontractor hereunder *shall not become due* until Subcontractor delivers to Willbros a complete release and waiver of all claims for taxes, liens or attachments arising out of the performance of the Work, and/or at Willbros' sole option, receipts showing the discharge thereof; and, in either case, an affidavit stating that such releases and/or receipts include all labor, equipment and material costs or taxes for which a lien or attachment could be filed . . . .

(*See id.*, Ex. A at ¶ 16; Ex. B at ¶ 16 (emphasis added).)  Based on these two provisions, Willbros argues that "[i]t was clearly the intent of the parties that any retainage amount was not to become

due until MasTec delivered to Willbros a lien-free project." (*Id.* at 9.)[5]

    1.    <u>Failure of Condition Precedent</u>

"'A condition precedent of a contract is one which calls for the performance of some act or the happening of some event after the contract is entered into and upon the performance or happening of which its obligations are made to depend.'" *See Woods v. City of Lawton*, 845 P.2d 880, 886 n.6 (Okla. 1992) (quoting *Rollins v. Rayhill*, 191 P.2d 934, 937 (Okla. 1948)). "A condition precedent is a condition that must be met before the obligation under a contract becomes due." *Id.* (citing 3A Corbin on Contracts, § 628 (1960)). Courts that have interpreted provisions that are similar to Paragraph 16 of the Subcontracts at issue here have concluded that such provisions constitute a "condition precedent" to payment of "retainage" amounts in construction contracts. *See, e.g., Otis Eastern Servs., Inc. v. Raytheon Eng'rs & Constructors*, 15 F. Supp. 2d 318, 323 (W.D.N.Y. 1998) (holding that provision in subcontract stating that payment would not be made until a "Subcontractor's Release and Certificate" had been received by the contractor created a condition precedent to payment of retainage amount); *Building Erection Servs. v. Plastic Sales & Mfg. Co.*, 163 S.W.3d 472, 480 (Mo. Ct. App. 2005) (holding that no payment was required, including the ten-percent retainage amount, until the warranty and lien waiver were received despite fact that defendant had already paid other amounts prior to full compliance with the condition precedent). The Court therefore concludes that Paragraph 16 creates a "condition precedent" to

---

[5] Paragraph 16 states that *each payment* would not become due until Paragraph 16 was met. In other words, Paragraph 16 is not limited to serving as a condition precedent to payment of the "retainage" amount and does not specifically cross reference the ten-percent "retainage" amount discussed in Paragraph 11. Nonetheless, it is undisputed that the conditions in Paragraph 16 extend to payment of the retainage amount.

payment of the retainage amount.[6]

As evidence that the condition precedent has not been satisfied, Willbros cites to the

following deposition testimony of Mark Frosaker ("Frosaker"):[7]

> Q:      Are you familiar with the fact that a lien-free certificate needed to be
>         submitted to Willbros before the retainage was due?
> A:      That would have been one of the documents, yes.
> Q:      Has Willbros been given a lien-free certificate by your company?
> A:      Not that I am aware of, no.
> Q:      And can you [sic] company give them a lien-free certificate at this time?
> A:      No.  We would be unwilling to do that.

(*See id.*, Ex. D at 59:6-15.)  MasTec has not disputed this testimony and has not disputed Willbros'

Statement of Fact No. 9, which states that "MasTec has not complied with and is not presently

willing to comply with the conditions set forth in Paragraph 16 of [the Subcontracts]."  (*See* Def.'s

Amended Resp. To Willbros' Mot. for Partial Summ. J. at 2.)  Accordingly, the Court concludes as

a matter of law that the condition precedent of compliance with Paragraph 16 has not yet been

satisfied.

> 2.      Excuse of Failure to Comply with Condition Precedent Based on Willbros'
>         Alleged Breach

MasTec's only response to the argument that it has failed to satisfy conditions precedent to

Willbros' obligation to pay the retainage amount is that its performance of the condition precedent

was excused based on Willbros' own breaches of contract.  (*See id.* at 6 and 8 (stating that "whether

MasTec has given Willbros a lien-free certificate is irrelevant in the instant case in light of Willbros'

---

[6]  In its response brief, MasTec does not explicitly controvert this legal conclusion but instead raises other arguments to defeat summary judgment.

[7]  Neither Willbros' brief nor the deposition excerpt explains Frosaker's position within MasTec.

uncontroverted breach of the subcontracts prior to the substantial completion date" and that "once Willbros breached the contract by not delivering the pumps on time, MasTec was relieved from meeting its obligations under the contract").)  In support, MasTec presents the same evidence as it presented in support of its own motion for summary judgment on breach of contract.  As the Court has previously found, a question of material fact exists as to whether and to what extent Willbros was in breach of the contract based on failure to deliver the pumps, and the Court is unwilling to find that Willbros or MasTec is in breach of the contract as a matter of law.  This does not, however, end the inquiry.  The legal question remaining is whether Willbros' alleged breaches of contract, assuming the jury concludes that any such breaches occurred, can function to excuse MasTec's performance of the condition precedent.  If not, Willbros may be entitled to judgment as a matter of law, despite the question of facts presented regarding breach.

"[W]here parties . . . have deliberately entered into a written contract by which there is created a condition precedent to a right to performance, the condition must be performed or its requirements waived or otherwise excused before liability can arise on the promise qualified by the condition."  *See* 13 Samuel Williston, WILLISTON ON CONTRACTS § 39:1 (4th ed. 2000).  The nonoccurrence of a condition precedent may be excused on "a variety of grounds," which typically fall into the categories of waiver, prevention, or repudiation.  *Id.*[8]  MasTec's argument is that time was of the essence under the contract, Willbros' various failures rendered timely completion

---

[8]  Instead of contract principles related to conditions precedent, MasTec cites the general rule that "where one party contends that it is relieved of performing its own contractual obligation by the breach of the other party, the controlling issue is whether the breach invoked as a basis for relief is material."  *See  Polymer Fabricating, Inc. v. The Employers Workers' Compensation Ass'n*, 980 P.2d 109, 115 (Okla. 1999).  The Court, however, concludes that the more specific contract principles relating to excuses of conditions precedent, set forth above by the Court, provide the proper framework for analysis.

impossible, and MasTec was therefore prevented from completing the project on time.  Based on

this breach by Willbros, MasTec appears to contend that *all* of its further obligations under the

contract, including its obligation to deliver a lien-free certificate before being entitled to payment

of the retainage, were excused.  MasTec's argument does not invoke the doctrines of waiver or

repudiation, but instead most closely relates to the doctrine of prevention as its basis for non-

performance of the condition precedent.

> With respect to the doctrine of prevention, Williston states:
>
> It is a general principle of contract law that if one party to a contract hinders, prevents, or makes impossible performance by the other party, the latter's failure to perform will be excused.  This general principle has been referred to as the "doctrine of prevention." . . . . *Where a promisor prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, or to the performance of a return promise, the promisor is not relieved of the obligation to perform*, and may not legally terminate the contract for nonperformance.  Furthermore, in such a case, the promisor may not invoke the other party's nonperformance as a defense when sued upon the contract.  In short, under the doctrine of prevention, *where a party to a contract is the cause of the failure of the performance of the obligation due him or her, that party cannot in any way take advantage of that failure.*

*Id.* at § 39:3 (footnotes omitted) (emphasis added).  "The doctrine does not require proof that

performance of the condition to be excused would have occurred but for the wrongful conduct;

instead, it only requires that the promisor's conduct 'contributed materially' to the nonoccurrence

of the condition."  *See Moore Bros. v. Brown & Root, Inc.*, 207 F.3d 717, 725 (4th Cir. 2000) (finding

that general contractor's conduct made it "less likely" that lenders would arrange financing to cover

costs of design changes and had therefore hindered fulfillment of the condition precedent);

Restatement (Second) of Contracts § 245 cmt. b (1981).  *See also* 13 Samuel Williston, WILLISTON

ON CONTRACTS § 39:2 (4th ed. 2000) (section entitled "Requirement of causal relationship between

conduct of other party and excuse for nonperformance" explaining that where a breach is too

13

attenuated from the nonperformance of the condition precedent, such as when the breach related to a separate or prior contract, it will not function to excuse performance).[9]

Willbros correctly argues that MasTec has not presented specific record evidence regarding how and whether the alleged breaches by Willbros "materially contributed" to the failure to deliver the lien-free certificate contemplated in Paragraph 16 of the Subcontracts.  MasTec has, however, sufficiently alleged that breaches occurred and that such breaches caused any and all of MasTec's various failures under the Subcontracts.  Although MasTec did not present specific evidence regarding causation between Willbros' breaches and non-performance of the requirements in Paragraph 16, the Court is simply unable to conclude as a matter of law, based on the record before the Court, that causation between these two events does not exist and instead concludes that the issue causation must also be presented to the jury.[10]

However, the Court does not accept MasTec's position that any and every breach by Willbros will excuse the performance of the conditions in Paragraph 16 and plans to require at trial a causal connection between the alleged breaches and the non-performance of the condition precedent.  If either party wishes to submit additional legal argument and authority related to this issue for purposes of trial or instructions, the Court will allow it do so by brief no later than Friday,

---

[9] Despite the broad title of this section of the treatise, the Court is mindful that the principle enunciated regarding causation is supported by cases involving breaches of separate or prior contracts.  Nonetheless, the Court concludes that in order to successfully argue prevention, there must be at least some causal connection between the alleged breach and the reason for the failure of the condition.

[10] Willbros did not include in its undisputed statement of facts an explicit assertion that MasTec's failure to deliver the lien-free certificate was the reason for its failure to pay the retainage amount.  Although this appears to be undisputed, if it were disputed by MasTec, this causation question would also present a question of fact for the jury.  *See Barbara Oil Co. v. Patrick Petroleum Co.*, 566 P.2d 389, 393 (Kan. Ct. App. 1977).

June 15, 2006.

      B.     Tort Claim for Breach of Duty of Good Faith and Fair Dealing

MasTec's fourth counterclaim attempts to state an independent tort claim for breach of the duty of good faith and fair dealing.  "In ordinary commercial contracts, a breach of [the duty of good faith and fair dealing] merely results in damages for breach of contract, not independent tort liability."  *Wathor v. Mutual Assurance Ins. Admin.*, 87 P.3d 559, 561 (Okla. 2004); *Rodgers v. Tecumseh*, 756 P.2d 1223, 1226 (Okla. 1988) (tort of bad faith does not extend to commercial loan agreements because they are not contracts of adhesion).  Thus, as a general rule, Oklahoma does not recognize a cause of action for bad faith, or tortious breach of contract, in the ordinary commercial setting.  The only exception to this rule is if, in addition to a breach of contract, a party can demonstrate "gross recklessness or wanton negligence on behalf of a party."  *Id.*; *Beshara v. Southern Nat'l Bank*, 928 P.2d 280, 288 (Okla. 1996).

Although MasTec makes the assertion in its Amended Response to Willbros' Partial Motion for Summary Judgment that Willbros' conduct was grossly reckless and wantonly negligent because "Willbros entered into a contract in which it apparently had no intention from the beginning to perform its obligations in a timely manner," MasTec does not provide any record evidence supporting this assertion.  There is no evidence before the Court that Willbros' alleged failures under the contract went beyond typical breaches of contract and amounted to some type of gross recklessness or wanton negligence that would warrant the imposition of tort liability in addition to damages for breach of contract.  MasTec's fourth counterclaim will be construed, therefore, as asserting only a breach of the *contractual* duty of good faith and fair dealing that is implied in every contract and not as an independent tort claim.

V.      Conclusion

Defendant Mastec North America, Inc. d/b/a Mastec Pipeline Company's Motion for Summary Judgment (Docket No. 85) is DENIED in its entirety.  Plaintiff Willbros Engineers, Inc.'s Motion for Partial Summary Judgment (Docket No. 77) is DENIED as to MasTec's first counterclaim for breach of contract based on Willbros' failure to pay the retainage amount and GRANTED as to MasTec's fourth counterclaim, to the extent such claim sounds in tort.  If necessary to comply with legal rulings in this Order, the parties are ordered to file revised proposed jury instructions in accordance with this Order no later than June 15, 2006 and to prepare a revised proposed Pretrial Order, which is to be submitted at the Pretrial Conference scheduled for Monday, June 12, 2006.

IT IS SO ORDERED.

**Dated this 8th day of June, 2006.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**